## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 01 2016, 8:33 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Benjamin Loheide
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana
Indianapolis, Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Erik C. Berry, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | February 1, 2016 <br><br> Court of Appeals Case No. <br> 03A04-1508-CR-1231 <br><br> Appeal from the Bartholomew Circuit Court <br><br> The Honorable Stephen R. Heimann <br><br> Trial Court Cause No. <br> 03C01-0904-FA-885 |

**Altice, Judge.**

**Case Summary**

Erik Berry admitted to violating the terms of his probation. As a result, the trial court ordered Berry to serve his previously suspended sentence of eight years and three months. Berry presents two issues for our review:

> 1. Did the trial court abuse is discretion in ordering Berry to serve the entire portion of his previously suspended sentence?

> 2. Did the trial court err in denying Berry credit for time served in community corrections?

We affirm.

### Facts & Procedural History

On April 9, 2009, the State charged Berry with two counts of Class B felony dealing in cocaine and two counts of Class A felony dealing in cocaine. On July 20, 2009, Berry pled guilty to one count of Class B felony dealing in cocaine and one count of Class B felony dealing in a controlled substance. On December 15, 2009, the trial court sentenced Berry to concurrent sentences of twenty years with three years suspended to probation.

On November 15, 2013, Berry filed a request for sentence modification. Following a hearing on January 23, 2014, the trial court modified Berry's twenty-year sentence to eleven years and nine months executed and the remaining eight years and three months suspended to probation. The court also accepted Berry into the community transition program to be followed by five years of probation upon his release therefrom. Berry was released to probation from the community transition program on June 12, 2014.

[5] The State filed petitions to revoke Berry's probation on December 15, 2014, and January 30, 2015, and amended petitions to revoke probation on February 2, 2015, and April 9, 2015. In total, the State alleged nine different probation violations occurring between August 2014 and March 2015. The alleged probation violations included visiting unauthorized locations without the permission of his community corrections officer, Robin Winters. Winters tried to resolve the violation with an administrative agreement, but Berry did not pay his community service fees. Berry was arrested in October 2014 and failed to report this arrest to community corrections.[1] When he had to appear in court for the arrest, he falsified the work schedule that he turned into Winters. On November 4, 2014, Berry tested positive for Suboxone,[2] which he admitted to using daily although he did not have a prescription. Berry also admitted to using Xanax. In January 2015, Berry was terminated from his drug-abuse treatment program for missing a session. Berry also admitted to driving despite the fact that he did not have a valid driver's license. Berry had missed payments to cover his costs, fees, and restitution.

[6] In February 2015, Berry placed himself in the Fairbanks Addiction Treatment Center and informed Winters of his whereabouts. On March 31, 2015, Berry left a voicemail for Winters informing her that he was finishing one phase of his

---

[1] As a result of this arrest, Berry agreed to an extension of his probation and had to serve time on electronic home monitoring.

[2] Suboxone is the trade name of the compound buprenorphine, a schedule III narcotic drug. *See* Ind. Code § 35-48-2-8(e)(7).

treatment at Fairbanks and had not decided whether he was going to continue with the next phase or return to Columbus. Another officer contacted Winters the following day to say that the officer had seen Berry at Amazing Joe's, a restaurant in Columbus, the day before. Berry's fiancée, Natasha Griese, is a bartender at that establishment. When Winters could not reach Berry on his phone, she asked officers to go to his residence on April 7, 2015. Berry's ankle transmitter indicated he was inside, but he did not answer when officers knocked on the doors and windows. Berry did not keep community corrections apprised of his whereabouts. On May 29, 2015, Berry missed a court date. That night, he picked up Griese from work. On the way home, Berry was pulled over and arrested for driving while suspended.

[7] Berry was still incarcerated at the time of his probation revocation hearing on July 27, 2015. At the hearing, the trial court heard testimony from Berry, his father, and Griese. Winters also testified. With regard to disposition, Berry asked the court to extend his probation or place him in community corrections. Winters recommended that the court order the balance of Berry's sentence executed. The trial court ordered Berry to serve the entire balance of eight years and three months of his suspended sentence in the Department of Correction. The trial court gave Berry "credit for 31 days for time spent in work release (10/31/14 to 11/29/14) and 58 days for time spent in the Bartholomew County Jail (5/30/15 to 7/26/15)." *Appellant's Appendix* at 49. The trial court did not give Berry credit for time served in community corrections from January 29,

2014[3] to October 30, 2014 or from November 29, 2014 until May 30, 2015. Berry now appeals.

## Discussion & Decision

### 1. Disposition

[8] Berry argues that the trial court "did not give fair consideration to [his] particular circumstances," and thus, abused its discretion in ordering that he serve the entire balance of his previously suspended sentence, i.e., eight years and three months, in the Department of Correction. Berry notes that he admitted to violating his probation as alleged by the State and that he offered explanations for some of his behavior. He also testified, "I haven't used illicit drugs and I'm not making excuses." *Transcript* at 12. Berry repeatedly told the court, "I worked, I stayed clean, I tried to follow the rules." *Id*. at 13. Berry also informed the court that Griese was pregnant with his first child and that he wanted "the opportunity to work, to support my family." *Id.* at 12.

[9] Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. *Sanders v. State*, 825 N.E.2d 952, 955 (Ind. Ct. App. 2005), *trans. denied*. Where a trial court has exercised its grace by granting a defendant probation in lieu of incarceration, it has considerable leeway in

---

[3] The trial court modified Berry's sentence and accepted him into a community transition program in an order dated January 23, 2014. It is unclear from the record why Berry refers to January 29 as the date he began with community corrections.

deciding how to proceed when the defendant then violates the conditions of his probation. *Prewitt v. State,* 878 N.E.2d 184, 188 (Ind. 2007). Thus, the sanction imposed by the trial court upon a finding of a probation violation is reviewed on appeal for an abuse of discretion. *Brandenburg v. State,* 992 N.E.2d 951, 953 (Ind. Ct. App. 2013), *trans. denied.* An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Although the court has several alternative sanctions it may impose where it has found that a defendant has violated his probation, one of those sanctions is to order execution of all or part of the sentence that was suspended at the time of initial sentencing. *Id.; see also* Ind. Code § 35-38-2-3(h)(3).

[10] Berry argues that the trial court should have ordered that he be placed on work release rather than incarceration given that he "admitted his violations of probation and was forthright about the mistakes he had made," that he voluntarily checked himself into Fairbanks, that his father believed he is now "consistently clean," and that he drove only so he could maintain his employment and stay current with his financial obligations related to probation and community corrections. *Appellant's Brief* at 5. He also notes the undue burden on his fiancée and unborn child.

[11] The trial court indicated that it "had to struggle for a long time to try to determine what was appropriate," but in the end, the court was swayed by the fact that the court believed Berry was making excuses for his behavior to minimize his culpability and that he was being less than forthright with the

court. *Transcript* at 41. The court also considered that Berry had "been given opportunity after opportunity" and yet he continued to violate the rules of his probation. *Id.* The court told Berry that his own testimony convinced the court that he "just do[es]n't get it." *Id.* The court also noted that Berry had twenty-two convictions, including convictions for dealing in cocaine and other controlled substances, and that he had violated probation at least nine times. On the record before us, we cannot say the trial court abused its discretion in ordering Berry to serve the previously suspended portion of his sentence in the Department of Correction.[4]

## 2. Credit Time

Berry argues that pursuant to Ind. Code § 35-38-2.6-6, the trial court was required to grant him credit time for the time he spent in community corrections from January 29, 2014 to October 30, 2014, and again from November 29, 2014 to May 30, 2015. Because credit time is a matter of statutory right, trial courts do not have discretion in awarding or denying such credit. *Harding v. State*, 27 N.E.3d 330, 331-32 (Ind. Ct. App. 2015). The burden is on the appellant to show the trial court erred. *Id.* at 332.

---

[4] After the trial court announced the sentence, Berry's demeanor changed and he began yelling at the Judge, "Are you serious, Judge Heimann? You're serious right now? Get the fuck out of here, man. (inaudible) . . . get me out of here man. Get me out of this fucking Court man. (inaudible). Fuck man." *Transcript* at 42. The trial court noted that Berry "had to be subdued by the Deputy and left the courtroom and building yelling and screaming." *Appellant's Appendix* at 11.

[12]     The path to community corrections is determinative of whether a defendant is entitled to credit time. *See Shaffer v. State*, 755 N.E.2d 1193, 1195 (Ind. Ct. App. 2001) (Vaidik, J., concurring) (analyzing the differences between direct placement in community corrections and placement as a condition of probation). Berry relies upon I.C. § 35-38-2.6-6, which concerns credit time for defendants directly placed in a community corrections program. Defendants subject to direct placement are those "convicted of a felony whenever any part of the sentence may not be suspended under IC 35-50-2-2.1 or IC 35-50-2-2.2." I.C. § 35-38-2.6-1(a). Here, Berry was not directly placed in community corrections, but rather, he was placed in the community transition program and other community corrections programs as deemed appropriate as a condition of probation.

[13]     Generally, a defendant sentenced to probation does not earn credit time. Ind. Code § 35-50-6-6; *see also Harding*, 27 N.E.3d at 332. Exceptions to this rule include defendants who are in a work release program and must return to jail when not working or participating in other sanctioned activities and those confined to home detention who must remain at their residences except for work, to obtain medical care, or to attend an educational program or place of worship. *Id*. (citing *Senn v. State*, 766 N.E.2d 1190, 1198 (Ind. Ct. App. 2002)).

[14]     After his sentence was modified on January 23, 2014, Berry was accepted into a community transition program. Berry was released from the transition program on June 12, 2014. Berry remained on probation until he was placed on work

release from October 30 to November 29, 2014,[5] at which time he claims he was released back onto electronic monitoring as a condition of probation. Berry was on probation until his arrest on May 20, 2015.

[15] The record reveals only that Berry was required to complete the community transition program as a condition of his probation and that following his release from that program, he remained on probation. Berry does not claim that the time he spent in the transition program (January 2014 to June 2014) was so restrictive that he was required to return to jail when he was not working or that he was confined to his home. Similarly, Berry has not shown that the time period he spent on probation after his release from the transition program (June 2014 through October 2014) and that period after his time on work release (November 29, 2014 up until his arrest on May 20, 2015) was so restrictive that he was entitled to credit. Berry has not met his burden to show the trial court erred in not giving him credit for the time periods noted above.

[16] Judgment affirmed.

[17] Robb, J., and Barnes, J., concur.

---

[5] It is unclear from the record the reason Berry was placed in work release. Presumably, it resulted from his October 2014 arrest.